## LESSTER v. LAWYERS' SURETY CO.

(Supreme Court, Appellate Division, First Department. April 2, 1900.)

1. COURTS—APPELLATE TERM—APPEALS.

An appeal to the appellate division from a determination of the appellate term, on an appeal from a judgment of the city court of New York, is properly before the appellate division, where the appellate term granted leave to appeal to the appellate division, under Code Civ. Proc. § 1344, authorizing such an appeal on leave.

2. RECEIVERS—BONDS—LIABILITY OF SURETY.

A surety on a receiver's bond, conditioned for the faithful discharge of his duties, can show, in an action on the bond based on the receiver's disobedience of an order of the appellate court requiring him to pay out money, that the receiver's failure to pay out the money under such order was not in fact a disobedience, but that the receiver had before that time faithfully discharged his duties by paying over all the moneys in his hands in pursuance of a valid order of the trial court, which the appellate court reversed.

3. SAME—PAYMENT BY RECEIVER—GOOD FAITH—QUESTION FOR JURY.

Where a receiver paid out money on an order of the trial court, which was afterwards reversed by the appellate court, the question whether the receiver made such payment in good faith under such order, and was entitled to the protection afforded by such order, or whether it was made in collusion with the party who received the money, and with the intention of depriving the unsuccessful party of any subsequent order, was for the jury.

4. JUDGMENT—COLLATERAL ATTACK.

Where two appeals were taken at different times from, and two separate returns were made in, a cause, and the remittitur from the court of appeals stated that the appeals were dismissed, and the supreme court, in entering judgment, construed the order of the court of appeals as giving the appellee a bill of costs against each appellant, such construction, when not appealed from, became binding on all the parties, and cannot be attacked in a collateral proceeding against a surety of one of the appellants.

Van Brunt, P. J., and McLaughlin, J., dissenting.

Appeal from appellate term.

Action by William C. Lesster against the Lawyers' Surety Company. From a judgment of the supreme court, appellate term (62 N. Y. Supp. 479), affirming a judgment for plaintiff (62 N. Y. Supp. 430), defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and PATTERSON, JJ.

Carlisle Norwood, for appellant.

J. Baldwin Hands, for respondent.

RUMSEY, J. On the 15th of February, 1897, Mr. D. Phœnix Ingraham was appointed receiver of the rents, issues, and profits of premises described in the complaint in an action in which Mary Harris was plaintiff, and Lesster, the plaintiff here, a defendant. The order appointing him required him to receive the rents and profits, and dispose of the same, pursuant to the order of the court. Mr. Ingraham, as principal, and the Lawyers' Surety Company, as surety, executed a bond in the penalty of $1,000, conditioned "that, if the said D. Phœnix Ingraham shall faithfully discharge the du-

ties of his trust as such receiver, then this obligation shall be void; otherwise, to be in full force and effect." Upon the settlement of the accounts of the receiver, it was found that there was in his hands for distribution the sum of $883.71, out of which balance $141.25 was paid for referee's and stenographer's fees. Lesster made a motion that the balance in the receiver's hands be paid over to him, and that motion was denied. Mary Harris, the plaintiff in the original action, also made a motion that there be paid over to her the amount found due her on the deficiency judgment. Upon that motion an order was entered requiring the receiver to pay the sum of $114.25 as commissions, $10 for the premium accruing on his bond subsequent to the rendering of his accounts, and $578.82 to Mrs. Harris, and the remainder, being $39.12, to the chamberlain of the city of New York to the credit of the action. That order was entered on the 5th of July, 1898. A copy of it was served on the receiver on the same day, and a demand made for the payment to Mrs. Harris of the amount due her under the deficiency judgment, pursuant to the order. On the 6th of July, in pursuance of that demand, there was paid to Mrs. Harris the sum of $578.82, and the other payments were made as required by the order, so that the receiver paid out all the moneys in his hands in pursuance of the order of the court. The motion for that order was made, upon notice to Lesster, on the 20th of June, 1898. Lesster appeared upon the hearing and opposed it. The decision of the motion was handed down on the 1st of July, was published in the Law Journal on the 2d, and the order was entered on the 5th. The order was served upon Lesster's attorney on the 7th. Whether he had notice at the time of such service that the payments had been made does not appear, but on that day the attorney for the plaintiff (Mrs. Harris) received a letter stating that an appeal would be taken. The appeal was taken on the 4th of August. So far as appears, no steps were taken by Lesster to stay proceedings upon the order. The appeal was heard in the appellate division upon the same papers on which the motion was made in the special term. It did not appear in those papers that the money had been paid over to the plaintiff in pursuance of the order, and no suggestion to that effect was made at the argument. The appeals from those orders were argued together. In the month of December, 1898, an order was made by this court reversing the two orders, and directing that the receiver pay, out of the fund in his hands, $773.98 to Lesster. That order was subsequently served upon the receiver, with a demand for the payment, which was not complied with. After Ingraham had made the payments under and pursuant to the special-term order, an order was made discharging the receiver and canceling his bond. That order was afterwards vacated upon motion. The receiver appealed to the court of appeals from so much of the order of the appellate division as reversed the order of the special term directing the payment to the plaintiff in that action, and also from so much of the order as directed the referee to pay to Lesster the sum of $773.98. The appeal was dismissed, with costs by the court of appeals, and the

usual order was made at special term, upon the remittitur, that the order of the court of appeals be made the judgment of this court, and that the appeal be dismissed, with costs. Upon the filing of that remittitur, the attorney for Lesster taxed two bills of costs, one against Mary Harris for $115.10, and one against the receiver for $92.70, and judgment was entered against those persons, respectively, dismissing the appeals from the orders, with costs in favor of the respondent, Lesster, against the receiver for $92.70, and against Mary Harris for $115.10. The larger bill was paid, but the receiver's bill was not. Upon the appeal to the court of appeals, the defendant here gave the usual undertaking on appeal. Proper steps were taken to charge the defendant with liability for the bill of costs against Ingraham. The present action was brought in the city court to recover from the surety the sum of $773.98, with interest from the 17th of June, 1898, on the receiver's bond, upon the allegation that there had been a breach thereof by the refusal to pay over to Lesster the sum ordered to be paid by the appellate division. By a second cause of action, the plaintiff sought to recover the amount of his costs in the court of appeals which were awarded against the receiver. The judgment recovered by the plaintiff in the city court was affirmed by the special term, and upon appeal to the appellate term the judgment was also affirmed, but leave was given to appeal to this court. The appeal was accordingly taken pursuant to the leave thus given.

The respondent makes the preliminary objection that the appeal to this court has not been allowed as required by the Code of Civil Procedure. Such an appeal as this can only be taken to the appellate division when the judges of the appellate term permit it, and then it is taken, not from the judgment that was before them, but from the determination which they have made. Code Civ. Proc. § 1344. Whether there shall be an appeal is entirely in the discretion of the court making the determination. There is no dispute that the court at the time it made the determination gave leave for this appeal. It was competent for it to do so on the papers upon which its determination was made, if in its judgment a proper case existed, and when it has determined that a proper case does exist, and has expressed that determination by an order permitting an appeal, the appellant is at liberty to come to this court. The case is therefore regularly before us.

The condition of the defendant's bond as surety was that, if the receiver should faithfully discharge his duties as such receiver, then the bond should be void. It is claimed by the plaintiff that the surety, by executing this bond, made himself privy to any order which should be made by the court directed to the receiver in respect to his duties, and that, whenever it was made to appear that the receiver had failed to obey an order of the court, the condition of the bond was violated, and the defendant became liable on it. This would be technically the case if the condition of the surety's bond provided, in terms, that the receiver should obey all orders of the court, and should pay as directed by the court, or if there were any other express condition in the bond, from which it might be in-

ferred that the surety originally covenanted that the receiver should do the particular thing the court ordered him to do. Whenever such a bond has been made, as where one has given security for an administrator or an executor, by the terms of which he has bound himself that the administrator will obey the orders of the surrogate, it has been held such an order, properly made, is conclusive upon the surety, and when the failure to obey the order is established the liability of the surety is absolutely fixed. But those cases turn upon the express agreement of the surety that the administrator will obey the orders of the surrogate, and when such a contract has been made the courts say that by his contract the surety puts himself in privity with the administrator with respect to the decrees of the surrogate. But unless the contract contains some provision from which it can clearly be inferred that the surety has come in privity with the principal, so that he has bound himself to abide by the judgment against the principal, such an order is not conclusive against him, and he may question it when a liability is sought to be established against him on account of it. Thomson v. McGregor, 81 N. Y. 592; Douglass v. Howland, 24 Wend. 35. While the order of the court was evidence against this surety, the defendant was nevertheless at liberty to show, not that the order of the court was improper, but that the apparent disobedience to it was not in fact a disobedience at all, for the reason that the receiver had before that time faithfully discharged his duties, as such, by paying over all the moneys in his hands in pursuance of another valid order of the court. It is to be noticed that the order said to be disobeyed required the payment by the receiver "out of the moneys collected by him as such receiver." That order was entered on the 19th of December, 1898. It was made on the appeal from the special-term order, and, of course, there were before the court the same papers which were before the special term when the original application was made to it, and no others.

When the order of the appellate division was made, that court was not informed that the receiver had already paid over the whole of the moneys collected by him "as such" in obedience to the order which that court was then reviewing. As to that matter the receiver never had an opportunity to make proof before any court respecting that order. For that reason, he, as was suggested at the time of the settlement of the appellate division order, might have been relieved from the effect of it upon a proper motion, had he seen fit to make one, and for the reason that the order was made without knowledge by the court of a very material fact. If, after the making of that order and the demand upon the receiver for payment under it, a motion had been made to punish him for its disobedience, it is quite likely that he would have been permitted to exculpate himself by showing that, so far from disobeying the order of the court, he had already paid over the identical fund in compliance with a prior valid order. It is quite true that usually, when an order has been made requiring the payment of money, the person against whom it is directed is not at liberty, upon the motion to punish him for contempt for disobedience, to show that he had

no money in his hands out of which to make the payment; but that rule applies because ordinarily, when such an order is made, the court in making it determined, not only that the person against whom it is made ought to pay the money in a particular way, but that he has the money with which to pay. Where, however, as in this case, he has been compelled to pay money by an order of the court during the pendency of the appeal, and he has not had an opportunity to show that fact, there clearly is no injustice in permitting him to make proof of that fact in answer to any charge of apparent disobedience to the order. If the receiver would have this privilege, much more should an opportunity be given to the surety to show that the receiver had in fact faithfully discharged his duties by obeying a valid order of the court, and thereby denuding himself of the fund out of which the payment was ordered.

The order of the court at special term was entered on the 5th of July, 1898. It was an absolute requirement to this receiver to pay over the money in his hands in a proper way. A demand was made for the money on the very day the order was entered, and he paid the money in pursuance of that order on the next day. There can be no doubt that if that payment was made in good faith the order was at that time a full protection to the receiver. He had no possible excuse for refusing to obey it, and if he had refused the court might, and would undoubtedly, have punished him for contempt in so acting. The order stood in full force, and no appeal had been taken, and, even if an appeal had been taken, it would have made no difference with the duty of the receiver in that regard, for the obligation to pay continued until something occurred to relieve him of it. The order of the special term was just as binding as though it had been made by the appellate division. Not only was the receiver bound to pay, but he was not at liberty to question it, because he held the money only to pay over when the court directed him, and such was his absolute duty. When the order was reversed, it lost its force, but it did not cease to be protection to the receiver for whatever had been done under it while it stood. The mere reversing of an order, because it is erroneous, does not make one who has acted pursuant to it a wrongdoer, even though the effect of the reversal is to require the person who has received the benefit of it to make restitution, if the court sees fit to require him to do so. Lovett v. German Reformed Church, 12 Barb. 67–83; Simpson v. Hornbeck, 3 Lans. 53; Langley v. Warner, 3 N. Y. 327. Whether a receiver, being the mere hand of the court, could, without leave or direction of the court, move for such restitution, is not clear nor particularly important. It is quite clear, however, that Lesster could have done so. He acquired no right to take away from the receiver the protection the court had given him, although he might apply to the court for an order requiring the person who received the money to make restitution, and, if he did so apply, the court would have ordered it to be done. That right he still has. So far as the payment under the special-term order is concerned, then, it must be held that at the time it was made the order was a perfect protection to the receiver, if he made the payment in good faith,

and the plaintiff here is not in a situation to deprive the receiver of such protection unless he shows that the receiver made the payment, not in good faith, but in collusion with the person to whom it was made. If it can be said that the plaintiff gave any evidence tending to show that the payment was so made, it is quite clear that there was evidence to the contrary, and therefore, when that question became material, the defendant was entitled to have it submitted to the jury as requested. His exception to the refusal to submit it to the jury was well taken, and the judgment, for that reason, should be reversed, and a new trial ordered. A jury should say whether the payment to Mrs. Harris was made in good faith, and without intention to forestall the action of the court, or to deprive Lesster of the benefit of any subsequent order.

So far as the costs in the court of appeals are concerned, there can be no doubt that the plaintiff is entitled to recover them. When a judgment was entered upon the remittitur of the court of appeals, giving to the plaintiff a bill of costs against the appellant, that operated as a construction of the order of the court of appeals, and it became binding upon all the parties, and cannot be reviewed in this collateral way. By entering that judgment, the court at special term construed the order of the court of appeals as giving to the plaintiff a bill of costs against each appellant. That construction was not appealed from, and it is binding; but for the error with respect to the first cause of action the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except VAN BRUNT, P. J., and McLAUGHLIN, J., who dissent.